﻿Citation Nr: AXXXXXXXX
Decision Date: 08/27/19 Archive Date: 08/26/19

DOCKET NO. 190409-10658
DATE: August 27, 2019

ORDER

Service connection for diabetes mellitus, type II is granted.

Service connection for hypertension is granted.

Service connection for erectile dysfunction is granted.

Service connection for peripheral neuropathy left lower extremity (previously claimed as chronic leg pain) is granted.

Service connection for peripheral neuropathy right lower extremity (previously claimed as chronic leg pain) is granted.

Service connection for kidney condition (claimed as renal failure) is granted.

Service connection for hypertensive heart disease is granted.

Service connection for a bilateral hearing loss disability is denied. 

Service connection for tinnitus is denied. 

Special monthly compensation (SMC) based upon the loss of use of a creative organ is granted.

FINDINGS OF FACT

1. The evidence of record favors a finding that the Veteran was exposed to herbicide agents at the perimeter of the base while stationed in Thailand during the Vietnam era.

2. The Veteran’s diabetes mellitus, type II is presumed to be due to his exposure to herbicide agents during service.

3. Hypertension was caused by the Veteran’s diabetes mellitus, type II.

4. Erectile dysfunction was caused by the Veteran’s diabetes mellitus, type II.

5. Peripheral neuropathy of the bilateral lower extremities was caused by the Veteran’s diabetes mellitus type II.

6. Chronic kidney disease was caused by the Veteran’s diabetes mellitus, type II.

7. The Veteran has been diagnosed with hypertensive heart disease that is caused by the Veteran’s hypertension. 

8. The preponderance of the evidence shows that the Veteran’s bilateral hearing loss disability did not have its onset in service or within the one-year presumptive period following service and is not etiologically related to service. 

9. The preponderance of the evidence shows that the Veteran’s tinnitus did not have its onset in service or within the one-year presumptive period following service and is not etiologically related to service.

10. The Veteran’s erectile dysfunction results in the loss of use of a creative organ.

CONCLUSIONS OF LAW

1. Resolving all doubt in favor of the Veteran, the criteria for service connection for diabetes mellitus, type II, are met. 38 U.S.C. §§ 1110, 5107 (2012); 38 C.F.R. §§ 3.303, 3.304, 3.307, 3.309 (2018).

2. Resolving all doubt in favor of the Veteran, the criteria for service connection for hypertension, are met. 38 U.S.C. §§ 1110, 5107 (2012); 38 C.F.R. §§ 3.303, 3.304, 3.310 (2018). 

3. Resolving all doubt in favor of the Veteran, the criteria for service connection for erectile dysfunction, are met. 38 U.S.C. §§ 1110, 5107 (2012); 38 C.F.R. §§ 3.303, 3.304, 3.310 (2018).

4. Resolving all doubt in favor of the Veteran, the criteria for service connection for peripheral neuropathy lower left extremity, are met. 38 U.S.C. §§ 1110, 5107 (2012); 38 C.F.R. §§ 3.303, 3.304, 3.310 (2018).

5. Resolving all doubt in favor of the Veteran, the criteria for service connection for peripheral neuropathy right lower extremity, are met. 38 U.S.C. §§ 1110, 5107 (2012); 38 C.F.R. §§ 3.303, 3.304, 3.310 (2018).

6. Resolving all doubt in favor of the Veteran, the criteria for service connection for chronic kidney disease, are met. 38 U.S.C. §§ 1110, 5107 (2012); 38 C.F.R. §§ 3.303, 3.304, 3.310 (2018).

7. Resolving all doubt in favor of the Veteran, the criteria for service connection for hypertensive heart disease, are met. 38 U.S.C. §§ 1110, 5107 (2012); 38 C.F.R. §§ 3.303, 3.304, 3.310 (2018).

8. The criteria for service connection for bilateral hearing loss are not met. 38 U.S.C. §§ 1110, 5107 (2012); 38 C.F.R. §§ 3.303, 3.304, 3.307, 3.309, 3.385 (2018).

9. The criteria for service connection for tinnitus are not met. 38 U.S.C. §§ 1110, 5107 (2012); 38 C.F.R. §§ 3.303, 3.304, 3.307, 3.309 (2018). 

10. The criteria for special monthly compensation (SMC) based on loss of use of a creative organ are met. 38 U.S.C. §§ 1114, 5107 (2012); 38 C.F.R. §§ 3.102, 3.350 (2018).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Board notes that the rating decision on appeal was issued in September 2017. In April 2019, the Veteran elected the modernized review system. 84 Fed. Reg. 138, 177 (Jan. 18, 2019) (to be codified at 38 C.F.R. § 19.2(d)).

The Veteran had active service from July 1955 to December 1975. The Veteran selected the Evidence Submission Review option when elected into the Appeals Modernization Act (AMA) review system by timely submitting a VA Form 10182 following issuance of the March 2019 statement of the case. See April 2019 VA VA Form 10182. The Veteran submitted additional evidence and argument within the 90-day period from the date of receipt of his election in April 2019. 

The Board observes that the Veteran’s service-connection claims for diabetes mellitus, type II, peripheral neuropathy of the bilateral lower extremities, erectile dysfunction, and hypertension were previously denied in an April 2010 rating decision. The AOJ reopened the claims in the above-referenced September 2017 rating decision, and addressed them on their merits. The AOJ again issued a merits adjudication of each issue in the March 2019 statement of the case. Insofar as the AOJ has favorably found that the prior claims are reopened, the Board will not disturb that finding and will proceed with a merits adjudication as well. 

In a July 2019 attorney brief, the Veteran’s attorney asserted that the Veteran filed informal claims for benefits on a form dated February 29, 2012 that remain unadjudicated by the AOJ. Indeed, the AOJ did not adjudicate some of the issues purported to have been claimed in that February 29, 2012 correspondence. Therefore, the Board, in turn, cannot adjudicate those issues. The Veteran may resubmit the claim or claims to the AOJ, or notify the AOJ that the issues are still pending.

Similarly, insofar has the Veteran’s attorney also asserts in his July 2019 brief that a VA Form 9 filed in response to an April 2013 rating decision should be construed as a timely notice of disagreement, and the Board should take jurisdiction to compel the AOJ to send the Veteran a Statement of the Case, the Board again cannot adjudicate that matter, as it has not been incorporated within the scope of this AMA appeal. As above, the Veteran may resubmit the claims to the AOJ, or notify the AOJ that the issue is still pending and petition for the remedy sought.

Service Connection

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by service. 38 U.S.C. § 1110; 38 C.F.R. § 3.303(a). Service connection may also be granted for any disease diagnosed after discharge, when all of the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d). 

Direct service connection may not be granted without evidence of (1) a current disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a nexus between the claimed in-service disease or injury and the present disease or injury. 38 U.S.C. § 1112; 38 C.F.R. § 3.304. See Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004).

Additionally, for Veterans who served 90 days or more of active service during a war period or after December 31, 1946, certain chronic disabilities, including hearing loss and tinnitus, are presumed to have been incurred in service if manifest to a compensable degree within one year of discharge from service. 38 U.S.C. §§ 1101, 1112; 38 C.F.R. §§ 3.307, 3.309. 

Alternatively, when a disease at 38 C.F.R. § 3.309(a) is not shown to be chronic during service or the one-year presumptive period, service connection may also be established by showing continuity of symptomatology after service. See 38 C.F.R. § 3.303(b). The use of continuity of symptoms to establish service connection is limited only to those diseases listed at 38 C.F.R. § 3.309(a). Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013).

Certain diseases, to include diabetes mellitus, type II and atherosclerosis, shall be service-connected if the Veteran was exposed to an herbicide agent during active service even though there is no record of such disease during service, provided that the requirements of 38 C.F.R. § 3.307 (d) are satisfied. 38 C.F.R. § 3.309(e).

Regarding herbicide exposure in Thailand, VA Compensation & Pension Service (C&P) has determined that a special consideration of herbicide exposure on a factual basis should be extended to Veterans whose duties placed them on or near the perimeters of Thailand military bases during the Vietnam era, to include Nakhon Phanom Royal Thai Air Force Base. If a Veteran served on one of these air bases as a security policeman, security patrol dog handler, member of a security police squadron, or otherwise served near the air base perimeter, as shown by evidence of daily work duties, performance evaluation reports, or other credible evidence, then herbicide exposure is conceded on a facts-found or direct basis. This applies only during the Vietnam Era, from February 28, 1961, to May 7, 1975.

In addition to the regulations cited above, service connection is warranted for a disability which is aggravated by, proximately due to, or the result of a service-connected disease or injury. 38 C.F.R. § 3.310. 

The determination as to whether the requirements for service connection are met is based on an analysis of all the evidence of record and the evaluation of its credibility and probative value. 38 U.S.C. § 7104 (a) (2012); Baldwin v. West, 13 Vet. App. 1 (1999); see 38 C.F.R. § 3.303 (a). 

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant. 38 U.S.C. § 5107; 38 C.F.R. § 3.102; see also Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990). 

1. Entitlement to service connection for diabetes mellitus, type II.

In this case, there is no dispute that the Veteran has a current diagnosis of diabetes mellitus, type II. See e.g., January 2011 VA examination report. 

The Veteran’s service personnel and treatment records confirm service at Nakhon Phanom Royal Thai Air Force Base during the qualifying period. See e.g. personnel record dated in June 1975 regarding Veteran’s transfer from Nakhon Phanom. During the January 2011 VA examination, the Veteran reported having been at Nakhon Phanom for six months in 1975. The examiner did not indicate that the Veteran was malingering. Further, the AOJ has already informed the Veteran that it was able to verify that he served in Thailand. See May 2011 correspondence. 

The Veteran asserts that he is entitled to service connection for diabetes mellitus due to exposure to herbicide agents while serving in Thailand. Indeed, if herbicide exposure is shown by the record, service-connection for diabetes mellitus, type II is presumed under the provisions of 38 C.F.R. § 3.309(e). Thus, the appeal turns on whether the evidence supports a finding that the Veteran came into regular contact with the base perimeter such that exposure to herbicide agents can be presumed. For the reasons explained below, the Board finds that it does. 

The Veteran reported that while stationed at Nakhon Phanom Royal Thai Air Force Base, his duties required him to work on the flight line where herbicides were used to clear vegetation. See Veteran’s July 2019 affidavit and his attorney’s brief. He reported that he would walk or jog to the flight line and back to his barracks daily. Id. He reported that he worked on the flight line eight hours per day, five days per week, and often worked on weekends as well. Id. He reported that he observed pump sprayers traveling up and down the flight line along the perimeter adjacent to the flight line very frequently. Id. He reported one particular occasion when the spraying was so thick that when the wind blew, he could smell it and it made it difficult to breathe. Id. 

Service treatment records include numerous evaluations for flight readiness and indicate that the Veteran was a crewmember with flight hours. For example, an October 1973 flight clearance set to expire in September 1975 noted that the Veteran had 2000 flight hours. The Veteran also submitted a map and photographs of the base which show that the flight line was on the base perimeter. 

In this case, after consideration of the Veteran’s submitted evidence and his own testimony, the Board finds the Veteran’s statements to be credible. As the Board finds credible evidence that the Veteran had regular contact with the base perimeter, exposure to herbicide agents is conceded. Therefore, service connection for diabetes mellitus, type II is presumed. The benefit sought on appeal is granted. 

2. Entitlement to service connection for peripheral neuropathy of the bilateral lower extremities, hypertension, erectile dysfunction, and chronic kidney condition.

The Veteran asserts that his peripheral neuropathy of the bilateral lower extremities, hypertension, erectile dysfunction, and chronic kidney condition are all caused or aggravated by now-service connected diabetes mellitus, type II. For the reasons explained below, the Board agrees.

As an initial matter, there is no dispute that the Veteran has current diagnoses of bilateral lower extremities, hypertension, erectile dysfunction, and chronic kidney condition. See e.g. February 2016 VA treatment record and private DBQs. Thus, the requirement for a current disability is met with respect to each of the claimed disorders. The question before the Board is whether the claimed disorders were caused or aggravated by service or service-connected diabetes mellitus, type II. 

In the March 2019 statement of the case, the AOJ determined that there was evidence that his hypertension, erectile dysfunction, bilateral lower extremity peripheral neuropathy, and chronic kidney condition were related to diabetes mellitus, type II. The AOJ also noted that the service connection for the claims was denied on a secondary basis because service connection diabetes mellitus, type II was not warranted. 

As the Board has herein determined that service connection is warranted for diabetes mellitus, type II, the Board has reviewed the favorable evidence regarding the disorders and finds that service connection is indeed warranted for each disability on a secondary basis. 

The Veteran’s private clinicians completed disability benefits questionnaires (DBQs) with respect to each of these issues. 

Regarding erectile dysfunction and hypertension, J.S., PA-C, opined that the disorders were at least as likely as not due to diabetes mellitus, type II. See June 2017 DBQ. The Board acknowledges that J.S. did not provide detailed rationale for the opinion but finds the opinion to be probative given that the opinion was rendered on a VA DBQ form intended to evaluate the severity of diabetes mellitus and resulting residuals. There is no evidence against the claims. Resolving any doubt in favor of the Veteran, the Board finds that service connection for erectile dysfunction and hypertension, secondary to diabetes mellitus, type II, is warranted.

Regarding peripheral neuropathy of the bilateral lower extremities, J.S., PA-C, also completed a separate DBQ form to evaluate the Veteran’s diabetic sensory-motor peripheral neuropathy in March 2017. J.S. diagnosed diabetic polyneuropathy and cited moderate neuropathy symptoms in the Veteran’s bilateral lower extremities, thereby demonstrating that the Veteran had bilateral lower extremity peripheral neuropathy due to his diabetes mellitus, type II. Again, J.S. did not provide an explanation for the opinion but the Board finds the opinion to be probative as the evaluation was undertaken to evaluate the severity of the Veteran’s diabetes and resulting sensory-motor complications and the private clinician used a VA form. There is no medical opinion against the claim. Resolving any doubt in favor of the Veteran, the Board finds that service connection for peripheral neuropathy of the bilateral lower extremities, secondary to diabetes mellitus, type II, is warranted.

Regarding the claimed chronic kidney condition, in June 2017, private clinician, Dr. A.I., noted diagnoses of diabetic nephropathy and nephrosclerosis. In the medical history section of the DBQ, Dr. A.I. noted that the Veteran had a history of hypertension and diabetes mellitus with resultant nephropathy. Additionally, in the March 2017 DBQ authored by J.S., PA-C, in the section regarding other pertinent physical findings, the clinician also noted that the Veteran had renal failure due to diabetes mellitus type II. In the medical history section of the DBQ, J.S., PA-C noted that the Veteran had been a diabetic for many years and had developed renal insufficiency. There is no medical opinion against the claim. Resolving any doubt in favor of the Veteran, the Board finds that service connection for chronic kidney condition, secondary to diabetes mellitus, type II, is warranted.

In summary, the AOJ found that there was evidence that hypertension, erectile dysfunction, and neuropathy in the bilateral lower extremities were related to now-service connected diabetes mellitus, type II. The Board finds that the favorable evidence is probative and there is no evidence against the claims. Therefore, resolving all doubt in favor of the Veteran, service connection for hypertension, erectile dysfunction, peripheral neuropathy of the bilateral lower extremities, and chronic kidney condition, all secondary to diabetes mellitus, type II, is warranted.

3. Entitlement to service connection for hypertensive heart disease.

The Veteran has perfected an appeal as to whether his current heart disability (claimed as coronary artery disease) can be related to service—specifically to in-service herbicide exposure. The AOJ has denied the Veteran’s claim largely because it found the Veteran did not have such exposure in service. 

As discussed above, the Board has made a factual finding that the Veteran was at least as likely as not exposed to herbicide agents while serving in Thailand. The Board has found that the Veteran’s diabetes is presumed to be related to this exposure, and that the Veteran’s hypertension is secondary to his diabetes.

Importantly, the record under review by the Board includes no indication that the Veteran has ischemic heart disease, to include coronary artery disease (CAD). While a January 2011 nuclear cardiology report included an indication of CAD prompting further testing, such testing did not reveal an underlying coronary artery disability. Indeed, the results showed no scintigraphic evidence of inducible myocardial ischemia. Left ventricular function was normal, and the myocardial perfusion study was considered “normal.” Subsequent treatment records have identified the presence of peripheral artery disease and atherosclerosis (see, e.g., a July 2016 DBQ form Dr. K.G.), but do not indicate the presence of coronary artery disease or actual atherosclerotic heart disease. The Board observes that in listing all of the Veteran’s current diagnoses claimed to be related to in-service herbicide exposure within a July 2019 brief, the Veteran’s attorney did not identify a prior diagnosis of CAD, or any form of ischemic heart disease. 

As ischemic heart disease is not shown by the record, service connection for such may not be presumed related to in-service herbicide exposure.

That stated, the evidence does include indication that the Veteran suffers from hypertensive heart disease. See a January 2011 VA examiner’s report, at 3. This disability was specifically noted to exist in private treatment reports reviewed by the VA examiner at that time, and the examiner specifically linked the Veteran’s hypertensive heart disease to hypertension. As the Veteran has (1) perfected an appeal for heart disease (albeit as CAD); (2) the Board has awarded service-connection for hypertension herein; and (3) the evidence of record demonstrates that although the Veteran does not have CAD, he does have hypertensive heart disease related to now service-connected hypertension, the Board will expand the Veteran’s service-connection claim under Clemons v. Shinseki, 23 Vet. App. 1, 5 (2009), and award service-connection for hypertensive heart disease on a secondary basis. 

4. Entitlement to service connection for bilateral hearing loss.

In addition to the regulations cited above, with hearing loss claims, VA may only find hearing loss to be a disability when the auditory threshold in any of the frequencies of 500, 1000, 2000, 3000, or 4000 Hertz is 40 decibels or greater; when the auditory thresholds for at least three of the frequencies of 500, 1000, 2000, 3000, or 4000 Hertz are 26 decibels or greater; or when speech recognition scores are less than 94 percent. 38 C.F.R. § 3.385 (2018). Also, the threshold for normal hearing is between 0 and 20 decibels, and higher threshold shows some degree of hearing loss. Hensley v. Brown, 5 Vet. App. 155, 157 (1993).

The Board acknowledges that the absence of in-service evidence of hearing loss is not fatal to a claim for service connection. Ledford v. Derwinski, 3 Vet. App. 87, 89 (1992). Evidence of a current hearing loss disability (i.e., one meeting the requirements of 38 C.F.R. § 3.385, as noted above) and a medically sound basis for attributing such disability to service may serve as a basis for a grant of service connection for hearing loss. Hensley, 5 Vet. App. at 159; see also Godfrey v. Derwinski, 2 Vet. App. 352 (1992). 

In the instant case, the August 2017 VA examination report demonstrates that the Veteran has a current bilateral hearing loss, as defined by 38 C.F.R. § 3.385. 

With respect to in-service noise exposure, the Board finds there is no dispute that the Veteran was exposed to significant noise in service as he served as a flight crewmember. See e.g. October 1973 flight clearance report. 

Regarding presumptive service connection for hearing loss, there is no indication that the Veteran had hearing loss complaints at the time of service separation. His separation report of medical history, he denied hearing loss. See October 1975 Report of Medical History. The first indication of qualifying hearing loss was during the August 2017 VA examination, which was more than one year after service separation. Consequently, the Veteran is not entitled to a presumptive grant of service connection under 38 C.F.R. §§ 3.307, 3.309(a) for a disability present to a compensable degree within the first post-service year. The Board adds that the Veteran has not alleged his hearing loss symptoms started in service and have existed continuously since that time.

With respect to direct service connection, the August 2017 VA examiner opined that although the Veteran’s military occupational specialty was highly probable for noise exposure, it was less likely than not that his current hearing loss was related to the noise exposure in service. The examiner explained that the Veteran’s hearing thresholds were within normal limits at time of separation from service and that the Veteran’s current pattern of hearing loss is not consistent with noise induced hearing loss. The examiner explained that there was no evidence of cochlear damage at time of the Veteran’s separation from service. The Board places a high probative value on the August 2017 VA opinion as the examiner considered the Veteran’s history of noise exposure in service.

There are no medical/audiological opinions of record in support of the claim for service connection.

The Board acknowledges that the Veteran believes that his bilateral hearing loss is related to service; however, the Board finds that the Veteran is not competent to render an opinion as to the etiology of his hearing loss. In this regard, the Veteran is competent to report a history of in-service noise exposure. See 38 C.F.R. § 3.159 (a)(2); Washington v. Nicholson, 19 Vet. App. 362, 368 (2005); Layno v. Brown, 6 Vet. App. 465, 469-70 (1994). However, the Veteran lacks the requisite medical expertise and training to offer an opinion as to the etiology of a complex medical condition such as hearing loss. The existence of qualifying hearing loss, to include at the time of service separation, is determined by audiological testing. The Veteran has not been shown to be trained the field of audiology or to have the ability to objectively test his own hearing. As the Veteran lacks such training and credentials, he is not competent to diagnose hearing loss or provide an opinion pertaining to the etiology of his current hearing loss disability. Therefore, any statements in this regard are not probative.

Accordingly, for the reasons stated above, the Board finds that the preponderance of the evidence is against the claim for service connection for bilateral hearing loss. As the evidence is not in relative equipoise, the benefit of the doubt rule does not apply. See 38 C.F.R. § 5107 (b); Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

5. Entitlement to service connection for tinnitus.

There is no dispute that the Veteran has tinnitus. During the August 2017 VA audiological examination, the Veteran asserted that he had experienced intermittent ringing in the ears since 2005. As discussed above, the VA examiner has considered that the Veteran’s military occupational specialty was probable for noise exposure. However, the claim fails for lack of a relationship between the current disability and the noise exposure in service. 

The August 2017 VA examiner determined that the Veteran’s tinnitus was not directly related to noise exposure in service. The examiner explained again that there was no evidence of cochlear damage at the time of separation from service. 

There are no medical/audiological opinions of record in support of the claim for service connection.

Significantly, the Veteran does not assert continuity of tinnitus symptomatology since service. Rather, he reported that his symptoms began in 2005, which the Board notes was 30 years post-service. 

The Board acknowledges that the Veteran believes that his tinnitus is related to service; however, the Board finds that the Veteran is not competent to render an opinion as to the etiology of his tinnitus. In this regard, the Veteran is competent to report a history of in-service noise exposure and report the onset of his symptoms in 2005. See 38 C.F.R. § 3.159 (a)(2); Washington v. Nicholson, 19 Vet. App. 362, 368 (2005); Layno v. Brown, 6 Vet. App. 465, 469-70 (1994). However, as discussed above, the Veteran lacks the requisite medical expertise and training to offer an opinion as to the etiology of a complex medical condition such as tinnitus. Although the existence of tinnitus may be self-diagnosed, the etiology of the disorder requires medical expertise and training in the field of audiology. The Veteran has not been shown to be trained the field of audiology. As the Veteran lacks such training, he is not competent to provide an opinion pertaining to the etiology of his current tinnitus. Therefore, any statements in this regard are not probative.

Accordingly, for the reasons stated above, the Board finds that the preponderance of the evidence is against the claim for service connection for tinnitus. As the evidence is not in relative equipoise, the benefit of the doubt rule does not apply. See 38 C.F.R. § 5107 (b); Gilbert v. Derwinski, 1 Vet. App. 49 (1990). 

6. Entitlement to SMC based on loss of use of a creative organ

VA provides special monthly compensation if a Veteran, as a result of service-connected disability, has suffered the anatomical loss or loss of use of one or more creative organs. 38 U.S.C. § 1114(k) (2012).

Entitlement to special monthly compensation based on loss of use of a creative organ can also be granted based on erectile dysfunction. 38 C.F.R. § 3.350 (a)(1)(ii) (2018).

In light of the grant of service connection for erectile dysfunction (shown above), the Board grants special monthly compensation for loss of use of a creative organ, subject to controlling law and regulations governing the payment of monetary benefits.

 

V. Chiappetta

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board Donna D. Ebaugh, Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential, and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.